AO 106 (Rev. 06/09)   Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

FILED

AUG 1 5 2014

U. S. DISTRICT COURT
EASTERN DISTRICT, OF MO

|  |  |  |
|---|---|---|
| **In the Matter of the Search of** | ) | |
| | ) | |
| Information associated with the cellular telephone assigned | ) | Case No. 4:14MJ00160 DDN |
| number (314) 819-3087, IMSI #310260574045458, that is | ) | |
| stored at premises controlled by T-Mobile USA Inc. | ) | |

## APPLICATION FOR A SEARCH WARRANT

I,  ANTHONY BOETTIGHEIMER  , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

*Information associated with the cellular telephone assigned number (314) 819-3087, IMSI #310260574045458, that is stored at premises controlled by T-Mobile USA Inc.*

located in the   DISTRICT OF NEW JERSEY , there is now concealed

see ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ✓ evidence of a crime;
- ✓ contraband, fruits of crime, or other items illegally possessed;
- ✓ property designed for use, intended for use, or used in committing a crime;
- ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute and possess with intent to distribute controlled substances |
| Title 21 U.S.C. §§ 1956 & 1957 | Money Laundering |
| Title 21 U.S.C. § 843(b) | Unlawful use of communication facility |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

- ✓ Continued on the attached sheet.
- ❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

ANTHONY BOETTIGHEIMER, Task Force Officer
Drug Enforcement Administration
*Printed name and title*

**Sworn to before me and signed in my presence.**
Date: _____ August 15, 2014 _____

*Judge's signature*

City and State: _____ St. Louis, MO _____

Hon. David D. Noce, U.S. Magistrate Judge
*Printed name and title*
AUSA:    DEAN R. HOAG

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Anthony Boettigheimer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by T-Mobile USA Inc., a wireless provider headquartered at #4 Sylvan Way, Parsippany, New Jersey, 07054, within the District of New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require T-MOBILE USA INC. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      I am a Task Force Officer assigned to the Drug Enforcement Administration (hereinafter DEA), United States Department of Justice (hereinafter DOJ), currently assigned to the St. Louis Division. I have been assigned to the DEA for approximately nine months. Concurrent with this assignment, I have been commissioned as a police officer with the St. Louis Metropolitan (Missouri) Police Department, for approximately nine years. During the course of my law enforcement experience I have participated in numerous complex investigations with drug-trafficking organizations dealing in heroin, cocaine, marijuana and other controlled substances.

3.      I have participated in numerous drug investigations, which have resulted in the seizure of heroin, cocaine, marijuana, and other controlled substances. I am familiar with and have utilized normal methods of investigation, including, but not limited to, visual surveillance,

questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of undercover agents and the use of court-authorized wire intercepts.

4.     I am currently participating in an investigation of a cocaine, marijuana and heroin distribution organization, which is being jointly conducted by Special Agents and Task Force Officers of the DEA, along with Detectives from the Intelligence Unit of the St. Louis Metropolitan Police Department (StLMPD). This investigation is centered on the drug-trafficking organization (DTO) involving James SWOPES (a/k/a "Wonnie," a/k/a Wallem DAVED), the user of cellular telephone bearing number **(314) 819-3087, IMSI #310260574045458** (referred to as "target telephone #2" in the court-authorized Title III interceptions, and hereinafter referred to as "the **subject cellular telephone**" of the instant application), and others known and unknown, for committing the offenses of: Distribution and Possession with Intent to Distribute Cocaine, Marijuana and Heroin; Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine, Marijuana and Heroin; and the Unlawful Use of a Communication Facility to Facilitate Distribution of a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b); Interstate Travel to Facilitate Narcotics Trafficking, in violation of Title 18, United States Code, Section 1952; Federal Firearms Offenses, Title 18, United States Code, Sections 922 and 924; and Money Laundering, in violation of Title 18, United States Code, Sections 1956 and 1957. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

2

to show merely that there is sufficient probable cause for the requested warrant and does not set
forth all of my knowledge about this matter.

## PROBABLE CAUSE

6.     On June 4, 2014, the Honorable E. Richard Webber, United States District Judge,
Eastern District of Missouri, signed an order authorizing the interception of wire
communications to and from the **subject cellular telephone**, utilized by James SWOPES.
(Cause No. 4:14MC002914 ERW)  Monitoring of the wire communications over the **subject
cellular telephone** began on June 4, 2014, and the authorization period expired on July 4, 2014.

7.     On June 30, 2014, the Honorable Carol E. Jackson, United States District Judge,
Eastern District of Missouri, signed an order authorizing the first extension of the interception of
wire communications, along with the initial interception of electronic (text) communications, to
and from the **subject cellular telephone**, utilized by target subject James SWOPES.  (Cause
No. 4:14MC002914  ERW)      Monitoring of the **subject cellular telephone** continued
uninterrupted pursuant to the Court Order, until July 29, 2014, the expiration of the authorization
period.  The wire and electronic (text) communications were sealed on July 30, 2014.  As
indicated, this order authorized the interception of the electronic (text) messages over the **subject
cellular telephone** for the period of June 30, 2014, through July 29, 2014.  The instant
application is a request for the historical electronic (text) messages relative to the **subject
cellular telephone** from the inception of the telephone account, that of May 11, 2014, until
July 1, 2014, the day the investigative team began receiving text messaging pursuant to the
above-referenced Court Order.

8.     As articulated, the initial authorization did not include the electronic (text)
messages over the **subject cellular telephone**.  Monitoring of the verbal (wire) interceptions

3

revealed that James SWOPES utilized the text message feature of the **subject cellular telephone** to a great extent. Moreover, it became apparent that the missing text messages were crucial to the illicit drug trafficking of SWOPES. Thus, the instant application is requested as to give a complete picture and complement the captured verbal communications and the historical aspect of the overall investigation. In many instances, there have been both verbal and text messages in a purported drug scheme and without the text messages, there has been a vacuum. The complete scenario of the illicit activity remains unknown.

9.      The following sampling of summaries from pertinent, narcotic related wire and electronic (text) interceptions over the **subject cellular telephone** demonstrate that SWOPES, his associates, and co-conspirators have been utilizing their respective telephones to promote the needs of the narcotic enterprise. The bracketed summaries entitled **Affiant's notes,** which follow the calls, are the interpretations of the investigative team based on their collective training, experience and the best intelligence that has been gleaned up to the date of the respective interceptions.

10.     The following series of wire interceptions are between James SWOPES, the local cell head of the DTO currently under investigation, and Don McGHEE, a commissioned police officer with the St. Louis Metropolitan Police Department. The investigation to date suggests that McGHEE is using his status as a police officer to safe guard the illicit narcotic enterprise and, in this scenario, is warning SWOPES of a law enforcement investigation against SWOPES.

11.     **Interception #9773** occurred on July 6, 2014, at approximately 12:54 p.m., and is an incoming call to the **subject cellular telephone**, utilized by James SWOPES, from telephone number (619) 906-9090, subscribed to and utilized by Don McGHEE, 2706 Caroline, Apt. E., St. Louis, Missouri. McGHEE stated, "Pull up on me when you come out…I be at work at

4

three" (o'clock). SWOPES agreed and inquired, "What's the word?" McGHEE answered, "Some b*******," and SWOPES asked, "Who's involved?" McGHEE stated, "You...I'll meet you at the gas station." SWOPES asked, "Did this just happen today?" and McGHEE "No a m***** f***** told me about four o'clock this morning at the club."   [**Affiant's note:** McGHEE is advising SWOPES that he found out about an investigation into SWOPES' illicit activity. See below for further.]

12.   **Interception #9794** occurred on July 6, 2014, at approximately 3:10 p.m., and is an incoming electronic text to the **subject cellular telephone**, utilized by James SWOPES, from telephone number (619) 906-9090. The subscriber and user of this telephone is Don McGHEE, 2706 Caroline, Apt. E., St. Louis, Missouri. The text message read, "N (in) roll call." [**Affiant's note:** As stated, McGHEE is a police officer and is advising SWOPES that he is at roll call for the police department. The message demonstrates that McGHEE is aware that SWOPES utilizes text messaging on his telephone to maintain contact as part of his overall illicit scheme. See below for further details.]

13.   **Interception #9801** occurred on July 6, 2014, at approximately 3:42 p.m., and is an incoming call to the **subject cellular telephone**, utilized by James SWOPES, from telephone number (619) 906-9090. The subscriber and user of this telephone is Don McGHEE, 2706 Caroline, Apt. E., St. Louis, Missouri. The two greet each other and SWOPES inquired where McGHEE was before SWOPES stated, "I can meet you on Natural Bridge and Union, I be there in like two minutes." McGHEE agreed stating, "Alright I'm up here."

14.   **Related Surveillance:** Members of the investigative team seized a copy of a videotaped surveillance depicting McGHEE in a marked St. Louis Metropolitan Police car,

5

meeting SWOPES in his Porsche automobile on the Phillips 66 gas station lot located at Natural Bridge and Union just following the above interception.

15.     **Interception #9808** occurred on July 6, 2014, at approximately 4:03 p.m., and is an outgoing call from the **subject cellular telephone**, utilized by SWOPES, to the telephone number of an FBI Special Agent.  There was no answer.  [**Affiant's note:** This interception occurred just after the above face-to-face meeting between McGHEE and SWOPES. Investigative team members are now aware that SWOPES has a professional relationship with the FBI agent.  It is plausible to believe that SWOPES was attempting to find out details of the investigation into himself from the agent.  The FBI agent originally planned to not return the call. When the FBI agent was apprised of the situation, and in an effort to assist in the investigation, the agent later contacted SWOPES telephonically.  They agreed to meet at a later time.  This meeting is pending.]

16.     **Interception #10470** occurred on July 7, 2014, at approximately 2:33 p.m., and is an incoming call to the **subject cellular telephone**, utilized by James SWOPES, from telephone number (619) 906-9090.  The subscriber and user of this telephone is Don McGHEE, 2706 Caroline, Apt. E., St. Louis, Missouri.  SWOPES inquired, "What's the word?" and McGHEE stated, "Man the heat" (police).  SWOPES replied, "Hot as a m***** f***** out there," and McGHEE reiterated, "Code word heat...code word heat, what you got going on." SWOPES stated, "Ah, you said code word heat," before McGHEE again reiterated, "Man heat (police) advisory...man s*** don't come."  [**Affiant's note:**  The above series of contacts are relative to McGHEE making contact with SWOPES to warn him about the instant investigation against SWOPES.  Text messaging was part of this scenario.]

6

17. The following series of electronic (text) interceptions occurred over a three-day period and involve three subjects, including James SWOPES. The scenario involves the purported distribution of narcotics and an inquiry into the narcotics and/or the payment for the narcotics.

18. **Interception #9765** occurred on July 6, 2014, at approximately 12:13 p.m., and is an incoming electronic text message to the **subject cellular telephone**, utilized by James SWOPES, from telephone number (314) 532-8742. The subscriber and user of this telephone are unknown at this time. The text message read, "Attention: Today we r (are) having a blowout sale from 1pm-5pm. If u (you) snooze u (you) lose. Thanks!" **[Affiant's note:** According to CS#3 of the original affidavit, pertaining to the interception of wire interceptions over target telephone #1, there was a drug procurement trip by members on the fringe of the DTO of the instant investigation, to Sikeston, (southern) Missouri. This was said to have occurred a matter of days prior to the above and below interceptions. CS#3 advised that multiple kilograms of cocaine were delivered to St. Louis, Missouri. In an effort to corroborate the information provided by CS#3, an investigation ensued. It was learned that two subjects involved in the southern Missouri drug faction, were stopped in a vehicle outside of Dallas (Comeby), Texas, by law enforcement in that locale. Texas investigators seized approximately $290,000 in United States currency and two pistols from the vehicle. At the current time, members of the instant investigative team are attempting to collect and analyze the information on this vehicle stop in an effort to ascertain if it is connected with the DTO members of the instant investigation. At the current time, the incidents cannot be definitively connected. Nonetheless, based on CS#3's information, multiple kilograms of cocaine made their way to St. Louis, at which time this series of interceptions began. It is the belief of the investigative team, based on their collective training

7

and experience, that the above and below text messages pertain to the distribution of narcotics that had arrived in St. Louis, Missouri.]

19.     **Interception #9768** occurred on July 6, 2014, at approximately 12:14 p.m., and is an outgoing electronic text message from the **subject cellular telephone**, utilized by James SWOPES, to telephone number (314) 532-8742. The subscriber and user of this telephone are unknown at this time. The text message read, "Cool I need to check u (you) out." [**Affiant's note:** This text message response occurred one minute after Interception #9765 above and was sent to the same telephone number. See below for further detail.]

20.     **Interception #9785** occurred on July 6, 2014, at approximately 2:54 p.m., and is an incoming electronic text message to the **subject cellular telephone**, utilized by James SWOPES, from telephone number (314) 532-8742. The subscriber and user of this telephone are unknown at this time. The text message read, "The warehouse is open." [**Affiant's note:** Again this text is within minutes of the Interception #9765 above and is believed to advise James SWOPES that the narcotics are available. See below for the response from the **subject cellular telephone**.]

21.     **Interception #9787** occurred on July 6, 2014, at approximately 2:55 p.m., and is an outgoing electronic text message from the **subject cellular telephone**, utilized by James SWOPES, to telephone number (314) 532-8742. The subscriber and user of this telephone are unknown at this time. One minute after Interception #9785, the **subject cellular telephone** responded with a text message that read, "I'll be down."

22.     **Interception #10224** occurred on July 7, 2014, at approximately 11:45 p.m., and is an outgoing electronic text message from the **subject cellular telephone**, utilized by James SWOPES, from telephone number (470) 246-3431. The subscriber of this telephone is target

8

subject Anrico PORTER.    The text message read, "What happen(ed) to my stuff (narcotics/money) dude." [**Affiant's note:** Anrico PORTER is fully outlined in a prior affidavit of this investigation, as being a distributor for the James SWOPES DTO.  PORTER is a recidivist offender, having been arrested and convicted multiple times for narcotic related crimes, including the distribution of narcotics. Based on the close time frame of this interception to the above interceptions, it is believed that James SWOPES is inquiring what happened with respect to SWOPES' narcotics or drug derived currency.]

23.    The following series of interceptions, including two wire interceptions and three electronic text messages, are between SWOPES, utilizing the **subject cellular telephone**, and James CUNNINGHAM.  CUNNINGHAM is a close associate of SWOPES and is connected to members of the earlier outlined Sikeston (southern), Missouri, drug faction.    These communications occurred over a three day period just after the purported drug delivery to St. Louis, Missouri.

24.    **Interception #10004** occurred on July 7, 2014, at approximately 1:46 p.m., and is an outgoing wire interception from the **subject cellular telephone**, utilized by James SWOPES, to telephone number (314) 568-7706.  The subscriber of this telephone is unknown at this time, however, wire interceptions and related investigation reflect that James CUNNINGHAM a/k/a Slim, is the user of the telephone. CUNNINGHAM stated, "It's all bad Bo, them cats um come after'em (the narcotics) fast…I went through them fast…It all bad right now for a couple of days" (the narcotics are already distributed). SWOPES replied, "Oh I got it" (I understand) and CUNNINGHAM answered, "I call you in two days, let you know what we're looking like." [**Affiant's note:** The investigative team believes that CUNNINGHAM is advising that he has already distributed the narcotics and he will contact SWOPES in two days to give him an update

9

on the collection of the money owed for the narcotics. See below, in fact, two days later, SWOPES is texting CUNNINGHAM for the update.]

25.     **Interception #10844** occurred on July 9, 2014, at approximately 4:08 p.m., and is an outgoing electronic text message from the **subject cellular telephone**, utilized by James SWOPES, to telephone number (314) 568-7706. The subscriber of this telephone is unknown at this time, however, wire interceptions and related investigation reflect that James CUNNINGHAM a/k/a Slim, is the user of the telephone. The text message read, "What's the word I need u" (you). [**Affiant's note:** SWOPES is asking for the money owed him from the sale of narcotics.]

26.     **Interception #10913** occurred on July 9, 2014, at approximately 5:28 p.m., and is an incoming electronic text message to the **subject cellular telephone**, utilized by James SWOPES, from telephone number (314) 568-7706. The subscriber of this telephone is unknown at this time, however, wire interceptions and related investigation reflect that James CUNNINGHAM a/k/a Slim, is the user of the telephone. The text message read, "Not yet waiting on sum" (some). [**Affiant's note:** CUNNINGHAM replied that he is waiting for the money to be given to him. From the training and experience of the investigative team it is known that when dealing in large scale narcotic trafficking, oftentimes the narcotics are remanded to subjects on a consignment (up front) basis. In turn, after the sale of the narcotics, the customers make the drug derived, currency payments back to their respective sources of supply.]

27.     **Interception #10915** occurred on July 9, 2014, at approximately 5:29 p.m., and is an outgoing electronic text message from the **subject cellular telephone**, utilized by James SWOPES, to telephone number (314) 568-7706. The subscriber of this telephone is unknown at

10

Case: 4:14-mj-00160-DDN   Doc. #: 1   Filed: 08/15/14   Page: 12 of 20 PageID #: 12

this time, however, wire interceptions and related investigation reflect that James CUNNINGHAM a/k/a Slim, is the user of the telephone. The text message read, "Dam I need it so when u (you) think." [**Affiant's note:** This text occurred one minute after the above text. SWOPES is stressing that he wants his money and wants to know how long CUNNINGHAM believes it will take to get the money.]

28.     **Interception #10918** occurred on July 9, 2014, at approximately 5:30 p.m., and is an incoming wire interception to the **subject cellular telephone**, utilized by James SWOPES, from telephone number (314) 568-7706. The subscriber of this telephone is unknown at this time, however, wire interceptions and related investigation reflect that James CUNNINGHAM a/k/a Slim, is the user of the telephone. CUNNINGHAM stated, "What's the minimum you need right quick cause I got like two checks I'm waiting on and some other s***, so I'm like, I'm damn near negative today." SWOPES indicated that he understood and CUNNINGHAM continued, "I don't know I'm fitting to see what's coming up…but find out what you need (who much money)…I'm like in a bad spot probably three, four, five (amount of money)…I definitely be able to get the rack ($10,000) up next two days or something. I gave you three ($3,000) this month, I told you five ($5,000) this month right…I told you five this month, I already gave you three rack" ($30,000). SWOPES replied, "You gave me what," and CUNNINGHAM responded, "Three this month, I said in 30 days I'm going to give you five stacks ($5,000), I gave you three right." SWOPES answered, "Yeah," and CUNNINGHAM stated, "Yeah I met you three different times with a rack a time." [**Affiant's note:** This interception occurred one minute after the above text and is a continuation of the theme, wherein CUNNINGHAM owes a large amount of money to SWOPES. There are multiple references to "stacks" and "racks." From the training and experience of the investigative team, it is known that in the narcotic underworld as in

11

gambling, a "stack" is a reference to $1,000 and a "rack" is the equivalent of $10,000. Clearly, CUNNINGHAM owes SWOPES a great deal of money.]

29.     Clearly, as articulated herein, James SWOPES utilizes the electronic text messaging feature of his telephone to a great extent. The court authorized text messages outlined herein, when evaluated with the corresponding wire interceptions, demonstrate that the text messages are pertinent, narcotic related communications, prompting the authorization requested in this application.

30.     On June 16, 2014, a preservation letter was sent to T-Mobile USA, Inc., requesting that all text messages since the inception of the telephone account was established on May 11, 2014, be preserved. As outlined, based on the latest court authorization reference the **subject cellular telephone**, the team has been receiving the text messages since July 1, 2014, thus it is only the text messages from the time frame between May 11, 2014 and July 1, 2014, that are being requested with this application. The investigative team believes that the analysis of these text messages, when coalesced with the surrounding wire interceptions, will be valuable in developing a prosecutable case against the SWOPES DTO.

31.     In my training and experience, I have learned that T-Mobile USA Inc., is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved electronic text messages, and multimedia messages for T-Mobile USA Inc. Additionally subscribers may be located on the computers of T-Mobile USA Inc. Further, I am aware that computers located at T-Mobile USA Inc., contain information and other stored electronic communications belonging to unrelated third parties.

32.     Wireless phone providers often provide their subscribers with electronic text message services. In general, a provider will store electronic text messages on behalf of a

12

particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of T-Mobile USA Inc., for weeks or months.

33. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by T-Mobile USA Inc., for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

34. Wireless phone providers typically retain certain transactional information about the use of each telephone, to include electronic the text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls and electronic text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved

35. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio

13

signal from the cellular device and thereby transmitted or received the communication in question.

36.     Wireless providers may also retain text messaging logs that include specific information about electronic text messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

37.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing

14

digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

38.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.     Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

39.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require T-Mobile USA Inc., to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

40.     Based on the forgoing, I request that the Court issue the proposed search warrant.

41.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18, United States Code, Section 2711. Title 18, United States Code, Sections 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court in the

15

Eastern District of Missouri is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." Title 18, United States Code, Section 2711(3)(A)(i).]

42. Pursuant to Title 18, United States Code, Section 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

43. Pursuant to Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer. In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

## REQUEST FOR SEALING

43. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

16

## **ATTACHMENT A**

**Property to Be Searched:**

This warrant applies to information, including electronic text messages, associated with the T-Mobile USA Inc. cellular telephone assigned telephone number **(314) 819-3087, International Mobile Subscriber Identification (IMSI) #310260574045458**, a pre-paid telephone account having no subscriber information, that is stored at premises owned, maintained, controlled, or operated by T-Mobile USA Inc., a wireless provider headquartered at #4 Sylvan Way, Parsippany, New Jersey 07054.

## ATTACHMENT B

**Particular Things to be Seized:**

**I.      Information to be disclosed by T-Mobile USA Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of T-Mobile USA Inc., including any electronic text messages, records, files, logs, or information that have been deleted but are still available to T-Mobile USA Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), T-Mobile USA Inc., is required to disclose the following information to the government for each account or identifier listed in Attachment A:  All electronic text messages stored and presently contained in, or on behalf of the account or identifier;

a.      All existing printouts from original storage of all of the text messages described above;

b.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

**II.     Information to be seized by the Government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Distribution and Possession with Intent to Distribute Cocaine, Marijuana and Heroin; Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine, Marijuana and Heroin; and the Unlawful Use of a Communication Facility to Facilitate Distribution of a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b); Interstate Travel to Facilitate Narcotics Trafficking, in violation of Title 18, United States Code, Section 1952; Federal Firearms Offenses, Title 18, United States Code, Sections 922 and 924; and Money Laundering, in violation of Title 18,

United States Code, Sections 1956 and 1957. involving James SWOPES, the user of T-Mobile USA Inc., cellular telephone number (314) 819-3087, IMSI # 310260574045458, since May 11, 2014, the inception date of the account, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    The procurement or acquisition of controlled substances; preparatory steps taken in furtherance of the scheme; the methods of transportation of the illicit narcotics; the dispersal of the narcotics; and information pertaining to the money laundering methods reference to the drug derived currency.

b.    Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

2